UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| MINNESOTA LIFE INSURANCE COMPANY | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-cv-11231 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| MICHAEL A. EISCHEN and AME FINANCIAL STRATEGIES NETWORK, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff, Minnesota Life Insurance Company ("MLIC") brings this action against Michael A. Eischen ("Eischen") and AME Financial Strategies Network, Inc. ("AME") based on two separate agreements: the "2009 Contract" between MLIC and Eischen, and the "2013 Contract" between MLIC and AME. MLIC alleges that Eischen and AME breached their respective contracts or, alternatively, were both unjustly enriched by their actions. Defendants now move to dismiss MLIC's entire Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the foregoing reasons, defendants' Motion to Dismiss is granted in part and denied in part.

**Background**

The following facts are taken as true for the purpose of deciding this motion. MLIC is a Minnesota Corporation operating in Minnesota. Eischen is an Illinois resident and AME is an Illinois corporation that operates in Chicago. Despite the existence of forum selection clauses in both contracts, MLIC made the informed decision to waive the agreed upon venues and file this lawsuit in the Northern District of Illinois. (Dkt. 26). Defendants do not contest the venue or request arbitration. (Dkt. 25).

1

<u>The 2009 Broker Sales Contract</u>

On August 15, 2009, MLIC and Eischen entered into a Broker Sales Contract ("2009 Contract"), under which MLIC agreed to pay Eischen a commission for each MLIC life insurance customer he procured. The 2009 Contract contains the following "claw-back" or recapture provisions:

> 2.1 COMMISSIONS
>
> (a) Your compensation consists of commissions on products You sell. We will pay commissions as We receive premiums in cash, subject to Our established practices in effect at the time.
>
> * * * *
>
> (d) *We have the right to refund any premiums paid on a policy if We believe this is proper where a policy is rescinded, cancelled, or not accepted, or for any other reason We believe is proper. You agree to return to Us, when we ask for it, all earnings which we credited to You on any premiums which We refund.*
>
> * * * *
>
> 2.3 ADJUSTMENTS
>
> (a) RETURNED PREMIUMS. All compensation paid to You as provided in Section 2.1 under the applicable Brokerage Commission Schedule, on any premiums that are subsequently returned or otherwise not received by Us shall, upon Our demand, become a debt You owe to Us, payable according to paragraph 2.3(b) FIRST CLAIM ON EARNINGS; and
>
> (b) FIRST CLAIM ON EARNINGS. You agree to promptly repay all debts to Us including reasonable interest as We determine. We have first claim on all of Your earnings earned through Us. This means that, as and when elected, We may keep all or any part of Your earnings to reduce any debt You owe Us . . .

(Dkt. 1, Ex. A)(emphasis added).

Pursuant to 2.1(d), the 2009 Contract allowed MLIC to recapture any commissions paid to Eischen if MLIC refunded the insurance policy's premiums to an insured in the case of rescission, cancellation, not accepted, or any additional reason that is proper.

2

The Dowling Policy

On November 10, 2011, Eischen submitted an application to MLIC for an insurance policy on the life of Ronald L. Dowling ("Dowling"), which resulted in the issuance of a life insurance policy to the Ronald R. Dowling Life Insurance Trust II ("Dowling Policy") effective December 10, 2011. On December 1, 2011, the servicing firm acting on behalf of Eischen informed MLIC that certain adjustments were made to the Dowling Policy based on a Life Insurance Policy Illustration prepared by Eischen on September 29, 2011. As a result of this information, MLIC amended and backdated the Dowling Policy to February 2, 2011 in order to "save age." "Saving age" is when a policyholder pays a few months in premium up front in order to set the effective date of a life insurance policy strategically at the "younger age" to lock in a price. The Dowling Policy was then assigned to Enterprise Bank and Trust ("Bank") in order to finance the premiums due. The Dowling Policy was issued and MLIC paid Eischen a commission of $612,215.96 in accordance with the 2009 Contract.

On December 1, 2014, Mr. Dowling's premium financing loan became due. At that time, the cash surrender value of the Dowling Policy was $569,406.00 *less* than the amount owed on the loan. As a result of the difference, the life insurance policyholder and Bank decided to surrender the Dowling policy effective January 29, 2015. A "surrender" is when the insurance company pays out the policy's cash value because the policyholder voluntarily terminated the policy before its maturity or the insured event occurred. After the surrender, MLIC paid out the Dowling Policy's proceeds of 2,507,740.04 (minus the $20 administrative fee) to the Bank.

On December 16, 2014, Eischen filed a consumer complaint with the Illinois Department of Insurance ("IDOI"). The complaint stated that changing the effective date from December 10, 2011 to February 2, 2011 in order to "save age" caused irreparable harm to the policy with regards to its accumulation value. IDOI notified MLIC of the consumer complaint two days later and

3

advised them that the Dowling Policy should not have been issued with a "save age" of more than 6 months. Since the Dowling Policy was backdated by more than 10 months, IDOI found that it was issued in violation of Section 225(b) of the Illinois Insurance Code, 215 ILCS 5/225(b). Accordingly, MLIC took steps to remedy the situation by notifying the Bank and Dowling policyholder of the available remedies, which included rescission. A rescission is an agreement between the policyholder and insurance company to return the parties to status quo as though the contract were never made. It requires a return of all premiums paid. On March 18 and 19, 2015, respectively, the policyholder and Bank decided to rescind the Dowling Policy.

As a result of the rescission, MLIC sent the Bank an additional refund of $463,248.22, which equaled the net return of premiums minus the surrender amount previously paid to the Bank. On March 27, 2015, almost two months after the Dowling Policy was surrendered, MLIC notified Eischen that the policyholder and Bank rescinded the Dowling Policy, which permitted recapture of his commission in accordance with the 2009 Contract. MLIC determined that Eischen owed MLIC $400,135.96 ("Dowling Debt") after factoring in his earning credits and interest.

On April 23, 2015, MLIC sent a letter to Eischen stating that his account was negative and demanding payment in 30 days. Eischen refused to repay the Dowling Debt, which MLIC contends breached the 2009 Contract. MLIC has continued to demand payment from Eischen for the Dowling Debt to no avail.

<u>Nevel Policy</u>

On March 1, 2013, MLIC and AME Financial Strategies Network, Inc. entered into a "Brokerage General Agency Contract" ("2013 Contract"). The agreement permitted MLIC to appoint AME as a brokerage general agent and in return AME committed to procure applications for life insurance products offered by MLIC. (Dkt. 2, Ex. B). Eischen was the president of AME and signed the 2013 Contract in the officer section. The 2013 Contract contained compensation,

4

recapture, and adjustment provisions that were substantially similar to the 2009 Contract, except the designated brokerage general agent was AME. (Dkt. 1, Ex. A and B). The same day Eischen executed an "Irrevocable Assignment of Commissions on Fixed Products" ("Assignment"), which permitted Eischen to assign any or all of the first year and renewal commissions due or to become due to him "under the terms and provisions of Assignor's Broker Sales Contract with Minnesota Life dated March 1, 2013" to AME. (Dkt. 1, Ex. C).

On March 8, 2013, AME and Eischen applied for life insurance on behalf of Ira T. Nevel ("Nevel") that resulted in a policy to the Ira T. Nevel Irrevocable Insurance Trust ("Nevel Policy"). The Nevel Policy included a "Surrender Value Enhancement Agreement" ("SVEA") that was in effect until August 22, 2016. (Dkt. 1, Ex. D). Defendants agreed that a surrender of the Nevel Policy while the SVEA was in place would result in a compensation recapture in the following payment scheme:

> 100% of compensation paid in the last 12 months prior to surrender;
> 90% of compensation paid in the last 12-24 month period prior to surrender;
> 80% of compensation paid in the last 25-36 month prior to surrender.

(Dkt 1, Ex. D).

On August 19, 2016, the Nevel Policy holder of the Nevel Policy elected to surrender the Nevel Policy in return for the proceeds of $4,943,532.90 (minus $20 administration fee). As a result of the surrender, MLIC attempted to recapture $548,458.25 ("Nevel Debt") of the commission given to AME. On November 1, 2016, MLIC sent Eischen a letter demanding repayment within fourteen days. Defendants refused and MLIC continued demand recapture of the commission to AME for the Nevel Policy to no avail.

**Legal Standard**

A motion to dismiss pursuant to rule 12(b)(6) challenges the legal sufficiency of the complaint, not its merits. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 127 S.Ct. 1955, 167 L. Ed.

5

2d 929 (2007). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in a plaintiff's favor. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012). To survive the dismissal, the complaint must provide defendants with fair notice of the claim's basis and must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009). Contracts included as attachments to and referenced in the pleadings can be adopted as part of the pleadings and considered in the Court's decision. *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); Fed. R. Civ. P. 10(c).

**Discussion**

As an initial matter, despite the presence of a "choice-of-law" provision requiring the application of Minnesota law neither party asserted this right, and both parties applied Illinois law in their filings on this issue. The Court finds that the choice-of-law has been waived and accordingly, applies the law of the present forum. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014)(citing *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009))("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

*Count I - Breach of the 2009 Contract*

Eischen argues that the claim for breach of the 2009 Contract fails because rescinding the Dowling Policy after it was surrendered was a legal impossibility. He asserts that the policyholder's decision to first surrender the policy terminated the contract and thereafter foreclosed any opportunity for further action on it. Thus, MLIC could not recapture Eischen's commission. In response, MLIC contends that the noncompliant provision of the policy rendered the contract *void ab initio*, rendering rescission the only means of making the policyholder whole. So, MLIC claims that Eischen must return his commission because the 2009 Contract permits recapture of commissions in the event of rescission.

6

The Illinois Insurance Code ("Code") prohibits the inclusion of certain types of provisions in life insurance policies. Despite such noncompliance, an insurance policy that includes prohibited provisions, "shall be held valid, but shall be construed in accordance with the requirements of the section that the said policy . . . violates." 215 ILCS 5/442; *Hubner v. Grinnell Mut. Reinsurance Co.*, 4 F. Supp. 2d 803, 807 (C.D. Ill. 1998). Section 225(b) of the Code prohibits the inclusion of any "provision by which the policy purports to be issued or take effect more than 6 months before the original application for the insurance was made." 215 ILCS 5/225(b).

In the instant case, MLIC alleges that the Illinois Department of Insurance ("IDOI") determined that the Dowling Policy was issued out of compliance with the Code because the "save age" provision of more than six months violated Section 225(b) of the Code. Even in the case where policies are issued out of compliance with the law, Section 442 is read to invalidate the non-compliant provision, not the entire contract. *Ellis v. Sentry Ins. Co.*, 124 Ill. App. 3d 1068, 1073, 465 N.E.2d 565, 569 (1984); *Harris v. St. Paul Fire & Marine Ins. Co.*, 248 Ill. App. 3d 52, 57, 618 N.E.2d 330, 333 (Ill. App. Ct. 1993). Accordingly, in light of Section 442, the Court should construe the Dowling Policy as valid and in effect despite the noncompliant provision, not *void ab initio* as MLIC contends.

By surrendering the policy on January 29, 2015 and acquiring its proceeds, the Dowling Policy was effectively terminated, and the policyholder no longer had the right to exercise options related to it. *See Boyd v. Aetna Life Ins. Co.*, 35 N.E.2d 99, 100 (1941)(finding that by electing to surrender the policy and receive the cash value of the policy, the holder waived any further rights under the insurance policy); *Gen. Acci. Fire & Life Assurance Corp. v. Browne*, 217 F.2d 418, 424 (7th Cir. 1954); *see also TIG Ins. Co. v. Freeland* (In re Consol. Indus. Corp.), 330 B.R. 709, 711 (Bankr. N.D. Ind. 2004)(citing Couch on Insurance 3d, § 31:49)("cancellation of an insurance policy

terminates the contract, and the parties are relieved from any liability that might otherwise accrue under the policy, though not from liability already accrued.").

The Complaint alleges that the Dowling Policy was surrendered as of January 29, 2015, which would have made the subsequent rescission and attempt at recapturing the commission two months after impermissible. Further, the surrender option involves the payout of a policy's proceeds and not the premiums, so the commission for the surrendered Dowling policy was not subject to the recapture provision. Since MLIC fails to allege a factual basis under which Eischen was required to pay back his commission pursuant to the 2009 Contract, the Court dismisses Count I.

*Counts II and IV – Unjust enrichment*

Eischen and AME move to dismiss Counts II and IV, arguing that unjust enrichment is an improper remedy where contracts exist and govern the relationship between the parties. MLIC alleges that Eishen and AME are being unjustly enriched because refusing to return the commission violated the terms of the contracts between the parties.

Unjust enrichment occurs when a defendant retains benefits to a plaintiff's detriment, and retention of that benefit violates the principles of justice, equity, and good conscience. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). "Illinois law [however,] does not permit a party to recover on a theory of quasi-contract[, like unjust enrichment,] when an actual contract governs the parties' relations on that issue." *Keck Garrett & Assocs., Inc. v. Nextel*, 517 F.3d 476, 487 (7th Cir. 2008)(citing *Illinois ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 607 N.E.2d 165, 177 (Ill. 1992)).

Here, unjust enrichment is unavailable as a remedy because there are contracts that govern the relationship between the parties and the terms for recapturing commissions. Further, a "[p]laintiff's unjust enrichment claim must not include allegations of a specific contract governing

8

the parties relationship," and both Counts II and IV do. *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2003 U.S. Dist. LEXIS 6518, at *14 (N.D. Ill. Apr. 16, 2003)(St. Eve, J.). This Court finds that unjust enrichment is not viable as an alternative basis for recovery here, so Counts II and IV of the Complaint are dismissed.

*Count III - Breach of the 2013 Contract*

AME moves to dismiss Count III of MLIC's Complaint because it fails to allege performance of its obligations under the contract—a necessary element of a breach claim. MLIC contends that all the elements can be implied by the facts alleged in the Complaint.

To state a claim for breach of contract claim in Illinois, MLIC must allege: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Ass'n Ben. Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 849 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)). Courts have found that elements of claims not explicitly stated can be surmised from the facts in the complaint so long as the facts alleged go beyond stating a "sheer possibility" that is consistent with a defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. at 678; *see e.g. Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1410 (7th Cir. 1993)(finding that the Complaint alleged sufficient facts to reasonably infer that a party caused third-party breaches even though plaintiff failed to allege the whether the third parties terminated their contracts).

Here, the Court finds that the Complaint against AME alleges sufficient facts to state a plausible breach-of-contract claim. First, MLIC provides that the terms of the 2013 Contract require that MLIC pay AME a commission when AME procures insurance clients on MLIC's behalf. (Dkt. 1, ¶ 28). The Complaint also alleges that AME applied for and secured the Nevel

9

Policy on behalf of MLIC. (Dkt. 1, ¶ 29). Finally, Count III specifically requests recovery of the portion of the compensation that defendants earned on the Nevel Policy. (Dkt. 1, ¶ 53). Defendants do not contest whether or not MLIC actually paid them the commission. Defendants merely argue the technicality that MLIC did not expressly state that it gave defendants compensation for the Nevel Policy in the Complaint. Reading the explicitly alleged facts in a light most favorable to the MLIC, the Court finds that there is a sufficient basis to draw the reasonable inference that MLIC compensation was given to defendants for securing the Nevel Policy. Consequently, this Court finds the factual allegations in the Complaint state a claim that AME breached the 2013 Contract, and defendants' Motion as to Count III against AME is denied.

Eischen also moves to dismiss Count III because he claims he is not a party to the 2013 Contract that was allegedly breached. MLIC's only support for Eischen's personal liability is that he signed the 2013 Contract. Under Illinois law, an agent acting on behalf of a corporation when executing a contract cannot be personally liable for the contract unless there is some evidence demonstrating contrary intent. *Zahl v. Krupa*, 399 Ill. App. 3d 993, 1012, 927 N.E.2d 262, 278 (2010); *Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996).

Here, Eischen signed the contract in the section designated for the company's "officer," which demonstrates that he intended to act as a proxy and not assume personal liability for the agreement. *See Sullivan*, 78 F.3d at 326 ("When an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound."). MLIC does not allege any additional facts to demonstrate that Eischen had a contrary intent or that there was another basis for individual liability. *Thornbrook Int'l v. Rivercross Found.*, No. 03 C 1113, 2004 U.S. Dist. LEXIS 12431, at *27 (N.D. Ill. July 6, 2004)(Kennelly, J.). As the law is clear that an officer's signature in their representative capacity alone is not sufficient to connect Eischen to the agreement, this Court finds that MLIC fails to state

10

a claim of breach of contract against Eischen and Count III is dismissed against him without prejudice.

**Conclusion**

Based on the foregoing, defendants' Motion to Dismiss Counts I, II, and IV of MLIC's Complaint is granted with prejudice. Defendants' Motion to Dismiss Count III is granted as to Eischen without prejudice and denied as to AME.

IT IS SO ORDERED.

|  |  |
|---|---|
| ENTERED: | SHARON JOHNSON COLEMAN<br>United States District Court Judge |

Dated: 4/10/2018